# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ROBERTA M. LANGLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-06-297-SPS |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

The claimant Roberta M. Langley requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work in the national economy. . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless,

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on November 24, 1954, and was 51 years old at the time of the most recent administrative hearing. She has a tenth grade education and previously worked as a school bus driver, sales clerk, and cosmetologist. The claimant alleges she has been unable to work since December 1, 1997, because of joint disease, fibromyalgia, chronic fatigue, migraines, depression, and reflux disease and associated problems.

**Procedural History**

On June 1, 2000, the claimant filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. The applications were denied. ALJ Michael Kirkpatrick conducted a hearing and found the claimant was not disabled on September 17, 2001. The Appeals Council denied review, so the claimant appealed and the Commissioner's decision was ultimately reversed in *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir. 2004). The case was thereafter remanded to the Appeals Council, but in the meantime the claimant filed new applications on June 28, 2002. These applications were likewise denied. ALJ Kirkpatrick conducted another hearing and once again determined that the claimant was not disabled on February 17, 2004. The claimant appealed again and this Court reversed in Case No. CIV-04-411-FHS-SPS. That

case was also remanded to the Appeals Council, which consolidated it with the claimant's original case on June 3, 2005. ALJ Kirkpatrick conducted a supplemental hearing and once again found that the claimant was not disabled on March 3, 2006. The Appeals Council denied review, so this latest decision by the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.[2]

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work, *i. e.*, lifting and/or carrying 25 pounds frequently and 50 pounds occasionally and standing, walking and/or sitting for at least six hours in an eight-hour workday. The claimant was unable to work in environments requiring concentrated exposure to respiratory irritants (Tr. 481). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a sales clerk (Tr. 482).[3]

---

[2] The claimant filed prior unsuccessful applications for benefits in May 1997. She sought review by the Appeals Council but she did not appeal when it was denied. The ALJ indicated that the relevant period of review for the claimant's current applications was October 30, 1998 (the day following the prior denial) through March 3, 2006 (the date of the ALJ's latest decision). He explained that to the extent any evidence was discussed from the claimant's prior applications, it was for the limited purpose of determining the effect of her chronic health problems on her current level of functioning. *See Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990) (finding that the ALJ's decision not to reopen claimant's prior applications for benefits was discretionary and is not subject to judicial review under § 405(g)), *citing Califano v. Sanders*, 430 U.S. 99, 107-09 (1977).

[3] The ALJ's determination that the claimant could return to her past relevant work as a sales clerk was contradicted by the testimony of the vocational expert at the supplemental hearing, who opined that the claimant could perform *only* her past relevant work as a school bus driver (Tr. 544-45). On the other hand, a vocational expert who testified at a prior hearing *did* opine that the claimant could perform her past relevant work as a sales clerk (Tr. 448). The ALJ did not attempt

**Review**

The claimant contends that the ALJ failed to evaluate the medical evidence in accordance with the dictates of the United States Court of Appeals for the Tenth Circuit in *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir. 2004). Specifically, the claimant argues: (i) the ALJ erroneously found that her mental impairments were not severe; (ii) the ALJ failed to give appropriate weight to the medical source statement of a treating physician; (iii) the ALJ failed to explain why no weight was given to the medical source statement; and, (iv) the ALJ should have recontacted the treating physician before rejecting the medical source statement. The Court finds no error in the ALJ's treatment of the treating physician's medical source statements. But the ALJ *did* fail to properly analyze the opinions of agency consultants who opined that the claimant had mental functional limitations that could affect her ability to work. The decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further analysis.

The record reveals that in January 2003 agency psychiatrist Sally Varghese, M.D., completed Psychiatric Review Technique ("PRT") forms evaluating the claimant for affective disorders. Although she made the same findings on both forms, *i. e.*, that the claimant had a mild degree of limitation in restriction of activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; and had no episodes of

---

to harmonize these conflicting opinions or otherwise explain why he found one more persuasive than the other. While the Court declines to find this was reversible error, the ALJ *should* on remand provide an appropriate explanation.

decompensation of an extended duration, one form covered the period from September 2001 through December 2002 (Tr. 322-35), while the other form was for the period from August 2002 to January 2003 (Tr. 308-21). On both of the PRT forms, Dr. Varghese indicated that an RFC assessment was necessary (Tr. 308, 322). She completed the assessments and found that the claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions. She explained that the claimant could perform simple and some complex tasks, could relate to supervisors and co-workers, and her adaptive functions were intact (Tr. 300-03, 304-07). In March 2003, agency psychologist Ron Smallwood, Ph.D., also completed a PRT form evaluating the claimant for affective disorders and determined the claimant had only a mild degree of functional limitation in restriction of daily activities, maintaining social functioning, maintaining concentration, persistence, or pace, and there was insufficient evidence for episodes of decompensation. Dr. Smallwood determined the claimant's impairment was not severe (Tr. 278-91).

     In November 2005, the claimant underwent a psychological evaluation with consulting psychologist Dr. Larry Vaught, Ph.D. She complained of pain from arthritis and depression that had lasted four to five years. Examination revealed logical and goal-directed thinking with no loosening of associations, and she exhibited no obvious tangentiality or circumstantiality. Her manner was pleasant and cooperative, although plaintive, and her affect was appropriate. Dr. Vaught administered the WAIS-III to the claimant, and she achieved a verbal I.Q. of 74, performance I.Q. of 80, and a full scale I.Q. of 75. Her scores placed her in the fifth percentile and in the borderline range of intellectual functioning. Dr.

Vaught also administered the Beck Depression Inventory to the claimant. Her score of 54 was suggestive of moderate to severe depression, and she reported vegetative symptoms, including difficulty sleeping, fatigue, loss of appetite, loss of libido, and a preoccupation with her physical complaints. Dr. Vaught noted the claimant's pace did not seem impaired, and her persistence was found to be adequate for purposes of the examination. He assessed the claimant with depressive disorder (NOS), pain disorder, arthritis, hypercholesterolemia, acid reflux, and asthma (Tr. 529-31). He completed a mental medical source statement on which he found the claimant was slightly limited in several areas, but he also concluded she was moderately limited in her ability to understand, remember, and carry out detailed instructions and in her ability to respond appropriately to work pressures in a usual work setting and to changes in the work setting (Tr. 526-28).

At step two, the claimant must show she has an impairment severe enough to interfere with her ability to work. *Bowen v. Yuckert*, 482 U.S. 137 (1987). Although the claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), her step two burden is otherwise only a *de minimis* showing of impairment. *Hawkins*, 113 F.3d at 1169, *citing Williams* v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). The ALJ indicated he agreed with the findings of the non-examining consultants on their PRT forms, *i. e.*, that the claimant only suffered a mild degree of limitation in activities of daily living; maintaining social functioning; maintaining concentration, persistence or pace; and no episodes of decompensation (Tr. 477), and

concluded that the claimant's mental impairment was not severe.[4] But the ALJ did not mention that Dr. Varghese also completed an RFC assessment on the claimant or discuss her opinion that the claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions. *See Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence."). Further, although the ALJ *did* discuss Dr. Vaught's findings from his November 2005 examination of the claimant and his completion of a mental medical source statement, he mischaracterized those findings, *i. e.*, the ALJ indicated that Dr. Vaught "generally opined that the degree of claimant's functional impairment was 'slight.'" (Tr. 478). Dr. Vaught did find some slight limitations in mental functioning, but he also assessed the claimant with a *moderate* degree of limitation in her ability to understand, remember, and carry out detailed

---

[4] The ALJ indicated in one portion of his decision that the claimant's depressive disorder (NOS) *was* a severe impairment (Tr. 472). But the ALJ went on to analyze the claimant's mental impairment under the "special technique" prescribed by 20 C.F.R. §§ 404.1520a, 416.920a, and concluded that the claimant's mental impairment *was not* severe (Tr. 478). *See Cruse v. United States Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995) ("When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Secretary must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a [and § 416.920a] and the Listing of Impairments and document the procedure accordingly."), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). Any remaining doubt on this point would seem to be alleviated by the ALJ's failure to include any mental functional limitations in the claimant's RFC.

instructions, and in her ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting (Tr. 526-28), which the ALJ did not mention. Such selective use of Dr. Vaught's findings was inappropriate. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. *See also Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982). In any event, while the ALJ is not bound by any of the opinions by Dr. Varghese or Dr. Vaught, he must consider them and may not simply ignore them. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, *see* 20 C.F.R. §[§] 404.1527(d), [416.927(d)], although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion."), *citing Goatcher v. Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995) [emphasis added].

Accordingly, the decision of the Commissioner is reversed and the case remanded to the ALJ for further consideration of the claimant's mental impairment. On remand, the ALJ

should evaluate the opinions of Dr. Varghese and Dr. Vaught in accordance with the appropriate standards and determine whether the claimant suffers from a severe mental impairment. If so, the ALJ should reassess the claimant's RFC to include the necessary functional limitations and then determine whether the claimant can perform any work with her new RFC.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 27th day of September, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**